Burke, J.
(dissenting). We would affirm the defendant’s conviction, based upon his plea of guilty, for violation of section 1141 of the Penal Law. As we view the circumstances of this case, there was no defect in the search warrant based upon specificity of the items to be seized.
“ Specificity,” as that term is used in cases such as this, has no hard and fast meaning, but rather must be construed as that which is reasonable under the circumstances of each case. In the present case of these films, for example, unlike cases involving books, writing materials, etc., we do not think we could reasonably demand any greater degree of specificity than that which was used in this search warrant issued by a Judge upon probable cause. Because of the affidavit of a police officer which recited: (1) that the FBI had information that the defendant was engaged in the production of pornographic motion picture films; (2) that a Lieutenant Leary of the State Police had advised the affiant that a police investigation established the same, and (3) that lawfully intercepted telephone conversations corroborated the same, the issuing Magistrate properly authorized a search of defendant’s premises and a seizure of “ obscene, indecent and £ hard core pornographic ’ pictures, photographs and motion picture films ’ ’„ Upon execution of the valid warrant* *40 the police apparently searched the premises and confiscated the very films which they had probable cause to believe defendant had in his possession. This is different from walking into a bookstore and confiscating all the owner’s stock, or sitting down in such an establishment, perusing certain reading material and determining whether it is obscene or not, or, for that matter, sitting for a few hours viewing motion pictures to determine whether or not they appeal to one’s prurient interest.
Consequently, we disagree with the majority opinion when it states that ‘ ‘ The basic defect is that the language of the warrant delegates to the police officer executing it the function of determining whether the material is obscene.” There is no indication here that any such determination was made by the police officers upon execution of this warrant or that the warrant could reasonably be read as authorizing or directing them to make such a determination. To do so the officers, instead of simply seizing the film cans as they did, and as the warrant directed, would have had to set up a film projector or other viewing apparatus and examine the film frame by frame before seizing any of it. Such a procedure could not constitutionally be authorized and, of course, was not authorized under this warrant. The sole function of the officers executing this warrant was, as far as we can determine, that of confiscating for evidentiary purposes the films they found in defendant’s possession.
It is unreasonable to suggest that these concededly pornographic films could have been more accurately specified in either the affidavit or the warrant, as opposed to books and the like which are normally given titles, serial numbers, etc., and which in this day and age are a matter of public record. We must apply a standard of reasonableness in these cases, and in this respect we adopt the views of Mr. Justice Goldberg in United States v. Ventresca (380 U. S. 102 [1965]) wherein he stated: “If the teachings of the Court’s cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law plead *41 ings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.” (380 U. S., supra, p. 108; italics supplied.) (See United States v. Freeman, 358 F. 2d 459 [2d Cir., 1966].) Neither Stanford v. Texas (379 U. S. 476 [1965]) nor Marcus v. Search Warrant (367 U. S. 717 [1961]) dictate a contrary result in this ease.
In Stanford, the invalidated warrant had authorized the police to search the defendant’s home and confiscate all “ books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas ”. (379 U. S., supra, pp. 478-479.) That such authorization was incredibly broad and sweeping is manifest, and this is all the more borne out by the actual evidence which was confiscated: “ The books and pamphlets taken comprised approximately 300 separate titles, in addition to numerous issues of several different periodicals. Among the books taken were works by such diverse writers as Karl Marx, Jean Paul Sartre, Theodore Draper, Fidel Castro, Earl Browder, Pope John XXIII, and Me. Justice Hugo L. Black. The officers also took possession of many of the petitioner’s private documents and papers, including his marriage certificate, his insurance policies, his household bills and receipts, and files of his personal correspondence.” (379 U. S., supra, pp. 479-480.) It is abuses such as existed in Stanford that we must attempt to combat, but neither the broadness of the warrant nor the indiscriminate confiscation which existed in that case are present in the one before us now on appeal.
In Marcus, the police had applied for a search warrant with a list of allegedly offensive material (ten titles), nine of which they knew (because they had purchased copies) the defendants sold at their six establishments. Six warrants were issued authorizing seizure of obscene materials. As to such seizure there was no limitation to the magazines on the police list, and the officers executing the warrants seized all magazines which in their judgment were obscene. When an officer thought a magazine ought to be picked up, he seized all copies of it. Execution of such warrants amounted not only to a general search of the many thousands of titles in defendant’s stocks, but also consti *42 tuted a prior restraint on any publication that the police determined in their search to confiscate (11,000 copies of 280 titles).
We have illustrated that such circumstances do not exist here. The search was directed at pornographic films the police knew or had probable cause to believe defendant had in his possession, the warrant was issued by a Magistrate upon such probable cause and specified the offensive films in the only manner possible, and upon execution only such offensive films were confiscated. Under all these circustances, the warrant was as specific as could reasonably be required, and to reverse here would evidence the ‘ ‘ grudging or negative attitude by reviewing courts towards warrants ” warned against by Mr. Justice Goldberg in Ventresca (supra).
Accordingly we would affirm.
Chief Judge Fuld and Judges Bergan and Breitel concur with Judge Van Voorhis; Judge Burke dissents and votes to affirm in an opinion in which Judges Scileppi and Keating concur.
Judgment reversed and a new trial ordered.